# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0815-24
     A-1777-24

R.F., on behalf of minor child, O.F.,

 Petitioner-Appellant,

v.

BOARD OF EDUCATION OF
THE TOWNSHIP OF MONTCLAIR,
ESSEX COUNTY,

 Respondent-Respondent.

_____

    Submitted February 25, 2026 – Decided July 27, 2026

    Before Judges Smith and Berdote Byrne.

    On appeal from the New Jersey Commissioner of
    Education, Docket Nos. 150-5/23, 271-10/23 and 272-
    10/23.

    Regis Fernandez, attorney for appellant.

    Flanagan, Barone & O'Brien, LLC, attorneys for
    respondent Board of Education of the Township of
    Montclair, Essex County (Alexander L. D'Jamoos, of
    counsel and on the briefs).

Jennifer Davenport, Attorney General, attorney for respondent Commissioner of Education (David L. Kalisky, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

We consider the parties' back-to-back appeals from final administrative decisions by the Commissioner of Education (Commissioner) concerning their harassment, intimidation, or bullying (HIB) complaints against each other, as defined under the Anti-Bullying Bill of Rights Act (Anti-Bullying Act), N.J.S.A. 18A:37-13 to -47. In A-0815-24, R.F. appeals from the dismissal of a complaint he filed on behalf of his son, O.F., alleging that he was a victim of HIB based on the actions of two students, B.K. and B.M., in October 2022. The complaint was ultimately dismissed by the Commissioner in a final administrative decision. A-1777-24 involves cross-HIB complaints filed on behalf of both O.F. and B.K. against one another. In that matter, the complaint brought on behalf of O.F. was dismissed by the Commissioner in a final administrative decision. However, the cross-complaint brought on behalf of B.K. was substantiated by the Commissioner, who found that O.F.'s conduct constituted HIB grounded in retaliation. R.F. appeals both outcomes.

For the reasons which follow, we reverse and remand as to A-0815-24, and we affirm in part, reverse in part and remand as to A-1777-24.

2

## I.

### A.

*Facts*

The salient facts, taken from the voluminous record, are as follows.

<u>HIB 012</u>

In September 2022, O.F. started fifth grade at the elementary school after transition from homeschooling. He alleged that classmates B.K. and/or B.M. repeatedly physically and emotionally abused him beginning the first week of school.[1] On the third day of school, he alleged that B.K. and/or B.M. began "beating [O.F.] up," "pinning him to the ground and [kicking] him all over his body repeatedly and on different occasions." B.K. and/or B.M punched O.F.'s shoulder, neck, stomach, and back on the playground, and another student "repeatedly pinched" him in class. R.F. alleged that during the second week, B.K. and/or B.M. "joined in" on punching and kicking O.F., and they tackled him several times. R.F. alleged this behavior continued through the third week,

---

[1] The students' names are redacted throughout the record, so only their first initial is visible. Because B.K. and B.M. share the same first initial, it sometimes is difficult to differentiate in the record which student is being referenced. When it is unclear which student is being referenced in the record, we use "B.K. and/or B.M."

3

when B.K. and/or B.M. started chanting "husband and wife" while they were slamming O.F. against a wall at school.

O.F. reported that B.K. and/or B.M. taunted him while he was in the boys' bathroom using the urinal. O.F. alleged that this taunting caused him to urinate in his pants, adding to his emotional distress. O.F. believed that B.K. and/or B.M.'s labeling O.F. as "the wife" was name-calling which suggested gender-based targeting. R.F. documented his son's ongoing physical and emotional impacts, including medical visits due to a leg injury allegedly suffered at the hands of B.K. and/or B.M. and a psychiatric diagnosis of acute stress disorder.

Additionally, on October 11, 2022, R.F. observed O.F. return home from school, wet with urine and walking with a limp following the bathroom incident. On the same day, R.F. emailed O.F.'s homeroom teacher, Kristen McCann, informing her of the incident. McCann forwarded his email to the school principal, Dr. Terrence Somerville.

On October 12, 2022, R.F. emailed the school's social worker and anti-bullying specialist, Danielle Kupperman. Kupperman met with O.F. that day. O.F. reported that B.K. and/or B.M. "hit [O.F.] in the private area and looked at his privates in the bathroom."

4

On October 13, Kupperman responded to R.F., stating: she was aware of the allegations; there was a meeting with O.F.; and she would follow up with Dr. Somerville to provide support and to "see if this needs to be pursued further as an HIB investigation."

On October 14, Dr. Somerville met with all three students in an unsuccessful attempt to resolve the issue. The following day, R.F. emailed Kupperman, alleging that his son O.F. reported that he had been beaten up and kicked by B.K. and B.M. over twenty times.

On October 18 and 19, Kupperman met with O.F. again to investigate these and other allegations. During the October 18 meeting, O.F. reported that, during the third week of school, "he was kicked in the private parts." He also told Kupperman about the "husband and wife" name-calling. O.F. next reported to Kupperman that, since the joint meeting with Dr. Somerville, the situation had improved, and that one tormentor had "stopped" the behavior. During the October 19 meeting with Kupperman, O.F. reported that some of B.K. and B.M.'s behavior was directed at "everyone," including their use of inappropriate adult language, sexual gestures or comments, and teasing. However, O.F. clearly stated that B.K. and B.M. kicked only him. He told Kupperman that he did not know why B.K. and B.M. bothered him, and that he was anxious about

coming to school.  O.F. stated that he was worried that B.K. and B.M. would break into his home.

The same day, R.F. emailed Dr. Somerville, stating that O.F. continued to express concerns about bullying at school, and that he had trouble sleeping.  R.F. alleged that O.F.'s mother, M.A.H., had been present at school and witnessed B.K. or B.M. pull hay from a scarecrow and place some of it on O.F.

Still on October 19, Dr. Somerville told R.F. that the school would investigate the allegations as an HIB matter.  Later that night, R.F. emailed Dr. Somerville and Kupperman again, stating that O.F. was "very stressed out" from being repeatedly pulled out of class as part of the investigation.  R.F. suggested in the email that B.K. and B.M. apologize to O.F.

On October 20, R.F. filed a HIB complaint on behalf of O.F. (HIB 012).  The complaint contained the various allegations made by O.F. against B.K. and B.M.  R.F. further alleged that B.K. and B.M. "have been tormenting and assaulting [O.F.] since the [school started] and they do not like that he answers questions in class or is good at math and sciences . . . ."  The complaint further alleged that B.K. and/or B.M. engaged in various other inappropriate acts, including, but not limited to:  referring to O.F. as "the wife"; simulating oral sex

6

in his presence; and preventing O.F. from sitting with them at lunch or playing with them at recess.

On October 21, Kupperman met with B.K. Her purpose was to "to make [a] pre-determination of motivating characteristic" for B.K.'s actions. B.K. told her he did not have any problems with O.F. R.F. emailed Kupperman twice that day, and informed Kupperman that while the physical attacks were no longer occurring, O.F. was being "emotionally harmed . . . by being excluded from activities." R.F. also recounted the incidents O.F. alleged were precipitated by B.K. and B.M.

On October 25, the district's mental health and anti-bullying coordinator, Maggie Dock, agreed to assist Kupperman with the HIB investigation. Dock and Kupperman then interviewed B.K. and B.M. They reported that they and O.F. had pinched each other, but they denied ever kicking O.F. or holding him down. B.K. and B.M. claimed that they and O.F. had pushed each other on the playground. Both boys denied telling O.F. that he was "the perfect person to torment." Kupperman interviewed O.F. again that day. He reported that B.K. and B.M. had been "better," but one of them had made sexually inappropriate comments to him.

7

A-0815-24

On November 1, Kupperman completed her investigation and determined that the events did not qualify as a HIB incident under the Anti-Bullying Act. Notwithstanding her report, the school implemented certain remedial measures, including providing an alternate bathroom for O.F.'s use and giving him "preferential seating in class." On November 7, 2022, O.F. used a school bathroom—not his designated private bathroom—and said a fourth grader "peeked" and watched him urinate. R.F. emailed Sommerville and Kupperman that same day, notifying them of this incident. The school spoke to O.F., and R.F. emailed the school again, expressing concern about the school's handling of the incident. He claimed the school: never asked O.F. to identify the perpetrator; suggested O.F. had lied about not knowing the student's identity; accused him of "tr[ying] to pee on the other boy"; and made intimidating comments to O.F.

After R.F. and M.H.A. met with Dr. Somerville and Kupperman, the school district sent R.F. an email expressing regret that the district and O.F.'s parents could not resolve the HIB complaint. On November 17, 2022, R.F. spoke with Dock on the phone, alleging that O.F.'s bullying was grounded in race and gender discrimination. He stated that students targeted O.F. because he is Asian and that they made comments about how he "acts like a girl." Based

on these new allegations, the school re-opened the dismissed HIB complaint on November 17, 2022. Next, B.K.'s father, J.K., emailed the school about the HIB investigation, and stated that, per B.K., O.F. "continually instigates and antagonizes him," to the point that B.K. could not avoid him. J.K. sought an HIB investigation against O.F., unless R.F. ceased pursuit of the HIB complaint against B.K.

Kupperman and Dock interviewed O.F. again on November 22, 2022, in connection with the re-opened HIB complaint. They asked O.F. about the "husband/wife" game. The school officials asked why he thought B.K. called him the wife, and he responded, "I think he thinks I'm the girl, that I'm the wife." When asked what it meant, he said, "They think I can't do anything. They want me to be the girl. I think that's why they looked at me in the stall, to see if I have a penis." He denied that they made comments about the way he dresses, looks, or acts. Asked how he would feel if they called him the husband instead, O.F. said it would "still would make me feel uncomfortable. Like tormented." He also said that he avoided B.K. and/or B.M. and that the two children would pursue him. O.F. recounted many of the incidents for Kupperman and Dock.

Kupperman and Dock also interviewed B.K. and B.M, who said O.F. was trying to "antagonize" them to get them in trouble. They stated they did not

A-0815-24

know what O.F. meant about the "husband/wife game," saying the girls played "family" at recess. Later that night, R.F. emailed Kupperman and alleged that she did not adequately investigate the allegations. Among other things, he claimed the investigation exceeded the timeframe for HIB complaints. He also claimed that B.K. and B.M. targeted O.F. because O.F. is Asian and B.K. and B.M. are white.

On November 28, 2022, Dock concluded the second investigation. Dock agreed with the school district's original conclusion that the reported incidents did not qualify as an incident under the Anti-Bullying Act. Dock's report did not include any separate findings or investigative summary. Nevertheless, the superintendent, Dr. Jonathan Ponds, adopted the report a week later, finding that "the reported incident[s] did not meet the criteria [o]f HIB."

R.F. appealed to the Board, and the hearing took place on March 1, 2023. The Board issued its decision on March 7, adopting the superintendent's finding. Nevertheless, the Board directed the school to implement a safety plan. The plan included, among other things: a staffer that O.F. could approach with complaints; continued use of a private bathroom; and counseling on how to handle peer conflict.

## HIB 058 and 066

On February 17, 2023, B.K. and B.M. excluded O.F. from a game of Jenga. O.F. reported their behavior to a teacher, Donna Soprano. This incident prompted R.F. to notify the school and file another HIB complaint, attaching a note to the complaint from O.F. explaining what had happened to him, HIB 058.

On February 28, 2023, B.K.'s father, J.K., filed an HIB complaint on behalf of B.K. against O.F., HIB 066. In both the complaint and his accompanying email, J.K. alleged that O.F. tried to join B.K. and B.M.'s Jenga game, they said no, and O.F. then disrupted their game by throwing the Jenga pieces. J.K. said that B.K.'s classmates all viewed O.F. as "annoying, a bully, who calls students names, irritates them, and tries to interfere in their activities."

The school district assigned Joanne L. Butler, Esq. to investigate HIB 058 and HIB 066.

As part of her investigation, Butler interviewed B.K. and B.M. Both B.K. and B.M. reported that O.F. wanted to play Jenga with them, but they said no. B.K. and/or B.M. reported that O.F. took their Jenga pieces and threw them. B.M. did not report any issues with O.F., saying they were now "kind of friends." B.K. stated that he had "the right to not play with" someone and that he tried to "avoid" O.F. based on the past HIB complaints against him. B.K. and/or B.M.

also claimed that O.F. would pinch and scratch them and say "inappropriate things" to them.

Butler also interviewed two other students who were present. They reported that B.K. and B.M. did not let O.F. join the Jenga game. Neither student saw anyone throw Jenga pieces. Butler also interviewed the teacher present, Soprano, who said O.F. came to her about being excluded. She reported that she spoke to the students, and they allowed him to join. Soprano had not witnessed O.F. being bullied in the past.

Butler interviewed four additional teachers. The teachers did not observe any negative interactions between O.F., B.K., and B.M., although two noted that they kept the students apart due to the past complaints. One teacher observed more than one occasion where O.F. chose to sit with B.K. and B.M. without incident. Another teacher stated that she would separate O.F. from B.K. and B.M., because O.F. would "gravitate toward them." A third teacher observed that O.F. lacked social "nuances," and stated that she observed him interact with other students without incident.

Butler issued the HIB 058 report on March 6, 2023, concluding the allegations were "not substantiated under the HIB requirements." Her investigation did not include an interview with O.F. She instead relied on the

complaint allegations, R.F.'s email, and O.F.'s note. Butler found B.K. and B.M.'s statements credible, stating, "[t]heir accounts were not identical but generally consistent." Butler did not find B.K. and B.M.'s refusal to play with O.F. sufficient to support an HIB determination, concluding there was no evidence that their refusal was "based upon a real or perceived characteristic or that they knew or should have known that not playing with him would result in harm to [O.F.]" She accepted B.K. and B.M.'s justification for their refusal to include O.F. that they were in the middle of a game. She rejected O.F.'s position that their refusal was in retaliation for O.F.'s past HIB complaints.

On March 15, 2023, Butler issued a written report finding that B.K.'s complaint against O.F. (HIB 066) did not constitute a HIB incident. Butler's report did not include an interview with O.F., because R.F. declined to make O.F. available, expressing concern for his son's mental health. Her report incorporated the same student/teacher interviews from HIB 058, along with an updated statement from B.K. In his updated statement, B.K. denied filing the HIB complaint "to get back at" O.F. for his complaint. He described O.F. as "annoying, rude, and a little weird," and said O.F. would get upset easily, get mad if he lost a game, and would "hit or throw something out of nowhere." B.K. felt like O.F. was trying to "antagonize" him to get him "in trouble." B.K.

13

believed O.F. was targeting him and ultimately wanted to get B.K. in enough trouble to be expelled from the school.

Butler concluded the retaliation allegations were "not substantiated under the HIB requirements." While she credited B.K.'s allegations about the Jenga pieces, she said there was insufficient proof that O.F. threw the pieces "based upon a real or perceived characteristic or that he knew or should have known that doing so would result in harm to [B.K.]." She noted that "[w]hile retaliation is certainly a relevant issue herein, it does not appear that retaliation is the basis for this complaint." Butler did not find that O.F.'s continued attempts to interact with B.K. could be considered HIB.

After she issued her report, Butler interviewed O.F. He denied throwing Jenga pieces and claimed the other children, including B.K., were throwing the pieces and yelling while he was "trying to start a game." Butler submitted an amended report on April 5, 2023, and included O.F.'s interview. O.F.'s statement did not alter Butler's findings.

Dr. Ponds adopted Butler's findings and determined that HIB 058 did not qualify as an HIB incident. The superintendent specifically found insufficient evidence "to determine that an incident occurred that was motivated by a protected characteristic."

14

On May 15, 2023, the Board heard R.F.'s appeal from the superintendent's HIB 058 findings. The Board determined that HIB 058 failed to qualify as an HIB incident.

On May 22, 2023, Dr. Ponds rejected Butler's recommendation, and found that HIB 066 satisfied the HIB criteria because it constituted "retaliation." On July 13th, after an email complaint from R.F., the superintendent changed course, informing R.F. and M.A.H. by letter that he had reversed the finding against O.F. under HIB 066. J.K. appealed the superintendent's reversal to the Board. The Board "found that O.F. had made a false accusation against B.K.," and the HIB 066 retaliation charge was substantiated, effectively reversing the superintendent.

B.

*Procedural History*

A-0815-24

R.F. appealed to the Commissioner, challenging the Board's dismissal of HIB 012. The matter was transferred to the OAL. The Board moved for summary decision and R.F. opposed. Finding no material fact in dispute, the ALJ granted a summary decision for the Board and dismissed R.F.'s appeal. R.F. appealed the initial decision to the Commissioner. The Commissioner made

findings, including that: the Board's investigation of HIB 012 was "sufficiently thorough"; the Board was not arbitrary, capricious, or unreasonable because it did not substantiate that "any verbal or physical act occurred in the school bathroom" or that "O.F. was ever physically assaulted by the alleged offenders"; the Board failed to comply with the statutory timelines under N.J.S.A. 18A:37-15(b)(6); the Board's failure to comply with the timelines did not interfere with the due process rights of petitioner, where petitioner contributed to the delay; and the petitioner's claims of Board retaliation were properly rejected by the ALJ. The Commissioner adopted the initial decision, modifying the ALJ's finding that the Board had properly met all statutory timelines. The Commissioner's final agency decision (FAD) affirmed the Board's HIB 012 dismissal. R.F. appealed the FAD.

## A-1777-24

R.F. next filed an appeal with the Commissioner, challenging the Board's dismissal of HIB 058 and its affirmance of HIB 066. Both matters were transferred to the OAL and assigned to a different ALJ. The parties cross-moved for summary decision on both cases, and the ALJ consolidated HIB 058 and HIB 066 into one proceeding.

A-0815-24

On October 18, 2024, the ALJ entered an initial decision, granting summary decision in the Board's favor on HIB 058 and HIB 066, and dismissing R.F.'s petition.

R.F. appealed the initial decision, and the Commissioner made findings as to HIB 058, including that: the Board's investigation was sufficiently thorough; and the Board found insufficient evidence that B.K. and B.M.'s refusal to play Jenga with O.F. was motivated by a distinguishing characteristic. Consequently, the Commissioner concluded that the statutory criteria for HIB were not met and the Board's decision was not arbitrary or capricious.

The Commissioner turned to HIB 066. Reviewing N.J.S.A. 18A:37-15(b)(9), the Commissioner first determined that "a false accusation as a means of retaliation is sufficient for a finding that a district's HIB policy has been violated; it is not necessary for the false accusation to also meet the definition of HIB outlined elsewhere in the [HIB Act]." Next, the Commissioner found that "a distinguishing characteristic" was not required for a finding that "levying false HIB accusations against a student as a means of retaliation violated the Board's HIB policy." The Commissioner again found the Board's decision was not arbitrary and capricious.

The Commissioner then adopted the initial decisions for both HIB 058 and HIB 066 as its final determination.

## The Appeals

R.F. appealed HIB 012, arguing that the Commissioner committed error as to A-0815-24 because: there are material facts in dispute; the Commissioner mistakenly concluded that the Board's delay in investigating O.F.'s claims was not a violation of R.F.'s due process rights; the Commissioner mistakenly permitted the Board to use private counsel to investigate HIB 012; and the Commissioner erred by excluding evidence of Board retaliation against O.F. and his parents.

R.F. also appealed HIB 058 and HIB 066, making the same arguments as in HIB 012 with one addition: the Commissioner erred when it found that O.F. retaliated against B.K. by filing HIB 058 against him.

## II.

### A.

"[T]he Commissioner of Education has primary jurisdiction to hear and determine all controversies arising under the school laws." G.D.M. v. Bd. of Educ. of the Ramapo Indian Hills Reg'l High Sch. Dist., 427 N.J. Super. 246, 259 (App. Div. 2012) (alteration in original) (quoting Bower v. Bd. of Educ. of

E. Orange, 149 N.J. 416, 420, (1997)). In reviewing an agency determination, we "respect agency action taken pursuant to authority delegated by the Legislature." In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013). Thus, we should "not overturn an agency determination unless it is arbitrary, capricious, or unreasonable." In re Renewal Application of TEAM Acad. Charter Sch., 247 N.J. 46, 73 (2021) (citing In re Att'y Gen. Law Enf't Directives Nos. 2020-5 and 2020-6 (In re Directives), 246 N.J. 462, 489 (2021)). This standard "recognizes the 'agency's expertise and superior knowledge of a particular field,' as well as the [j]udiciary's 'limited role . . . in reviewing the actions of other branches of government.'" Id. at 74 (quoting In re Directives, 246 N.J. at 489) (omission in original).

When reviewing an agency determination, we make three inquiries:

> (1) whether the agency's action violates express or implied legislative policies—i.e. the law; (2) whether the record contains substantial evidence to support the agency's findings; and (3) whether the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Alcantara v. Allen-McMillan, 475 N.J. Super. 58, 64 (App. Div. 2023) (citing Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018)).]

So long as the agency has satisfied these criteria, then the reviewing court owes it substantial deference, even if it would have reached a different result. Ibid.

(citing In re Herrmann, 192 N.J. 19, 28 (2007)).  The burden is on the party challenging the agency action to show that the administrative determination was arbitrary, capricious, or unreasonable.  TEAM Acad., 247 N.J. at 73-74 (citing In re Directives, 246 N.J. at 489). "Where the issue is one of law, the Commissioner's . . . decision do[es] not carry a presumption of validity and it is for this court to decide whether those decisions are in accord with the law." G.D.M., 427 N.J. Super. at 260 (alterations in original) (quoting Parsippany-Troy Hills Educ. Ass'n v. Bd. of Educ. of Parsippany-Troy Hills, 188 N.J. Super. 161, 165 (App. Div.1983)).

B.

The framework for adjudicating HIB allegations is set forth in the Anti-Bullying Act and its corresponding administrative code.  The Legislature intended these laws "to strengthen the standards and procedures for preventing, reporting, investigating, and responding to incidents of harassment, intimidation, and bullying of students that occur in school and off school premises."  N.J.S.A. 18A:37-13.1(f).

The Act defines harassment, intimidation or bullying as:

> any gesture, any written, verbal or physical act, or any electronic communication, whether it be a single incident or a series of incidents, that is reasonably perceived as being motivated either by any actual or

perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic, that takes place on school property, at any school-sponsored function, on a school bus, or off school grounds as provided for in . . . [N.J.S.A.] 18A:37-15.3, that substantially disrupts or interferes with the orderly operation of the school or the rights of other students and that:

> a. a reasonable person should know, under the circumstances, will have the effect of physically or emotionally harming a student or damaging the student's property, or placing a student in reasonable fear of physical or emotional harm to his person or damage to his property;

> b. has the effect of insulting or demeaning any student or group of students; or

> c. creates a hostile educational environment for the student by interfering with a student's education or by severely or pervasively causing physical or emotional harm to the student.

[N.J.S.A. 18A:37-14.]

N.J.S.A. 18A:37-15 details the process for reporting and investigating an HIB allegation. This includes both verbal and written notification to the principal within a certain timeframe, which can be made by school personnel or by a parent. N.J.S.A. 18A:37-15(b)(5). If there is a preliminary determination

that the allegation constitutes a HIB incident, the school's anti-bullying specialist must investigate the allegation and complete it within ten days from the date of the written report.  N.J.S.A. 18A:37-15(b)(5), (6)(a).  The results of the investigation must then be reported to the superintendent within two days, and then reported to the board of education "no later than the date of the [next scheduled] board of education of meeting."  N.J.S.A. 18A:37-15(b)(6)(b), (c).  Parents of the students involved must be notified within five days after the results of the investigation are reported to the board of education.  N.J.S.A. 18A:37-15(b)(6)(d).  The parent may request a hearing on the investigation, which must be held within ten days of the request, and the board must issue a written decision to affirm, reject, or modify the superintendent's decision.  N.J.S.A. 18A:37-15(b)(6)(e).  This decision can be appealed to the Commissioner of Education.  Ibid.

The Commissioner can then decide to refer the matter for a hearing before the OAL.  N.J.A.C. 6A:3-1.11.  When a contested case is submitted to the OAL for a hearing, the Commissioner must give "attentive consideration" to the ALJ's initial decision.  N.J. Dep't of Pub. Advoc. v. N.J. Bd. of Pub. Utils., 189 N.J. Super. 491, 500 (App. Div. 1983).  The agency head remains the primary

22

factfinder and maintains the "ultimate authority . . . to adopt, reject or modify" the ALJ recommendations.  Id. at 507 (citing N.J.S.A. 52:14B-10(c)).

## C.

Summary decision is appropriate where there is no genuine issue of material fact in dispute.  N.J.A.C. 1:1-12.5(b).  The party opposing summary decision must demonstrate "there is a genuine issue which can only be determined in an evidentiary proceeding."  Ibid.  "The standard governing agency determinations under N.J.A.C. 1:1-12.5 is 'substantially the same as that governing a motion under Rule 4:46-2 for summary judgment in civil litigation.'"  L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 203 (2015) (quoting Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121-22 (App. Div. 1995)).  Thus, "a court must ascertain 'whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'"  Id. at 204 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).  While all reasonable inferences must be drawn in favor of the non-moving party, that party must present sufficient evidence to show a genuine issue of material fact.  Pantano v. N.Y. Shipping Ass'n, 254 N.J.

A-0815-24

101, 115 (2023).  We review a summary judgment decision de novo, applying the same legal standard as the trial court.  Mist Pharms., LLC v. Berkley Ins. Co., 263 N.J 554, 577 (2026).

III.

A.

HIB 012

In A-0815-24, R.F. argues that HIB 012 presented genuine issues of material fact because O.F. alleges that he was "repeatedly beat up and taunted based on his perceived gender," and that the Commissioner erred by accepting the Board's conclusory finding that O.F. fabricated the allegations.  We agree.

R.F. alleged that B.K. and B.M. watched O.F. use the urinal on October 11, 2022, repeatedly beat him in his private parts and chest in the past, and played a game where they labeled him the "wife."  R.F. claimed he observed the effects of their actions when O.F. came home one day wet with urine and with a limp.  Moreover, O.F. made ongoing complaints of a limp and pain on his right side—purportedly from B.K. and B.M. hitting him—requiring treatment from his pediatrician and a referral to a psychiatrist, who diagnosed him with acute stress disorder.

The Commissioner's FAD did not include supporting facts which led to its summary decision for the Board. Rather, the Commissioner found, without credible evidence in the record to support its findings, that: the Board conducted a thorough investigation; it properly determined that petitioner's allegations did not qualify as an act of HIB; and that O.F. failed to present a factual dispute. These findings overlook the dispute at the heart of the case—whether the underlying act of bullying occurred as alleged on HIB 012. See, e.g., Brill, 142 N.J. at 530 (summary judgment is appropriate where the disputed facts are "of an insubstantial nature"). B.K. and B.M.'s denials of the many allegations of physical intimidation, that they beat and kicked O.F. on numerous occasions and watched him urinate while taunting him, establish competing facts on the question of whether the bullying took place. B.K. and B.M.'s denials are insufficient to support a summary decision on the threshold issue of substantiation. N.J.A.C. 1:1-12.5(b).

Next, we examine whether the motivation for B.K.'s and B.M.'s alleged conduct presented a material issue of fact. To qualify as an HIB incident, the conduct alleged must be "reasonably perceived as being motivated either by any actual or perceived characteristic," including: race, sexual orientation, gender

25

identity and expression, or "any other distinguishing characteristic." N.J.S.A. 18A:37-14.

R.F. claimed in his emails in support of HIB 012 that B.K. and B.M. targeted O.F. in part because of his gender and ethnicity. There is support in the record for the gender claim—O.F. told Kupperman that B.K. and B.M. played a game they called "husband and wife," labeling O.F. "the wife" because they believed he was a girl. O.F. also alleged that they tried to look at his penis in the school bathroom. As with the allegations of physical bullying, B.K. and B.M. denied the claims. It follows that the dispute reduces itself to whose version of events is more credible. The voluminous record falls short on this point, as there is no support, including from Dock, the anti-bullying coordinator, explaining what led the Board to reject O.F.'s allegations in favor of B.K. and B.M.'s denials, and then find that O.F.'s allegations did not qualify as a HIB incident. The Board simply concluded that an HIB incident did not take place.

Based on the HIB 012 record before us, summary decision on the first element was premature. The record does not reveal whether the Commissioner, or any of the preceding factfinders, concluded no physical assaults took place, or that they took place, but did not qualify as HIB. On this record, a reasonable factfinder could find that B.K. and B.M. hit O.F. on one or more occasions and

26

looked at his penis. It follows that we cannot conclude that the Commissioner deferred to the Board's clear credibility findings, and that the findings here are entitled to deference. See, e.g., Parsippany-Troy Hills Educ. Ass'n, 188 N.J. Super. at 167 (determinations by the Commissioner and State Board of Education are "entitled to a presumption of correctness and will not be upset unless there is an affirmative showing that such decision was arbitrary, capricious or unreasonable.") (quoting Thomas v. Bd. of Educ. of Morris Twp., 89 N.J. Super. 327, 332 (App. Div. 1965)).

O.F.'s allegations, if credited, could support a finding that B.K. and B.M.'s conduct qualified as HIB as defined by N.J.S.A. 18A:37-14. A reasonable factfinder could also find that B.K. and B.M.'s conduct: (1) was motivated by O.F.'s gender expression, to determine whether he was in fact a girl; (2) occurred on school grounds; and (3) substantially interfered with O.F.'s rights. N.J.S.A. 18A:37-14. Moreover, a reasonable factfinder could find that this conduct: (1) would either harm O.F. or place him at risk of physical or emotional harm; (2) would have the effect of demeaning O.F.; or (3) would create a hostile environment for O.F. by interfering with his education or "severely or pervasively" causing him physical or emotional harm. N.J.S.A. 18A:37-14(a)-(c).

A-0815-24

"Where issues of credibility are presented, summary judgment is generally inappropriate." Singer v. Beach Trading Co., Inc., 379 N.J. Super. 63, 73 (App. Div. 2005) (citing Brill, 142 N.J. at 540). While one could find that O.F.'s claims were less credible—and thus find either that the bullying did not occur and/or that it was not motivated by a distinguishing characteristic—an agency should not consider credibility at the summary decision stage. See Conrad v. Michelle & John, Inc., 394 N.J. Super. 1, 13 (App. Div. 2007) ("In the context of a summary judgment motion, the judge does not weigh the evidence, or resolve credibility disputes.").

We conclude that the Commissioner's summary decision finding on HIB 012 was arbitrary, capricious, and unreasonable. O.F. presented a sufficient factual dispute under HIB 012 as to whether O.F. was assaulted on multiple occasions by B.K. and B.M., and whether their actions were motivated by a distinguishing characteristic. Therefore, we reverse the summary decision and remand to the Commissioner for a hearing consistent with the principles outlined here.

Because we remand, we do not reach two of R.F.'s other claims on appeal, namely that: the Board improperly delayed the HIB 012 investigation pursuant

to N.J.S.A. 18:37-15, and; the Commissioner erred by limiting review to HIB 012 only.[2]

B.

<u>HIB 058</u>

In A-1777-24, petitioner argues that HIB 058 presented genuine material factual disputes because O.F., B.K., and B.M. provided different stories of what transpired during the Jenga game. We disagree. Put simply, there was no <u>material</u> dispute—the children all agreed there was a fight while playing Jenga, and petitioner did not meet his evidentiary burden to show that O.F.'s exclusion from the game was due to a distinguishing characteristic.

The record shows the children all agreed that B.K. and B.M. excluded O.F. from a game of Jenga, but they disputed why he was excluded, and who exacerbated the situation by throwing Jenga pieces. There was no dispute that B.K. and B.M. refused to allow O.F. to join their game; this was corroborated by student witnesses. To the extent there was a dispute, Butler credited B.K. and B.M.'s statements about the Jenga game—they said they were in the middle

---

[2] We note that while the allegations and facts of HIB 012 are relevant to our analysis below of HIB 058 and HIB 066, we reject petitioner's theory that the allegations and facts of HIB 058 and 066 are necessarily relevant to the resolution of HIB 012 here.

29

of the game and did not want to include him, one of them stating he tried to avoid O.F. based on their past issues. Butler also weighed O.F.'s teachers' comments, who said that while they separated O.F. from B.K. and B.M. in school, O.F. often approached them.

The record shows Butler expressly found that B.K. and B.M.'s behavior was not motivated by a distinguishing characteristic. She also found B.K. and B.M. did not exclude O.F. in retaliation for his past HIB complaints. The Commissioner credited these findings, determining that "the record does not demonstrate that B.K. and B.M.'s actions could reasonably be perceived as being motivated by a distinguishing characteristic."

We are not persuaded by R.F.'s argument that B.K. and B.M. had a history of targeting O.F. for his race and gender, and that this is another example of such targeting. Neither O.F.'s written statement attached to HIB 058 nor his interview about the Jenga incident suggest that he was targeted in such a manner. While facts elicited in HIB 012, not HIB 058, may tend to show that B.K. and B.M.'s past treatment of O.F. was motivated by gender, R.F. produced no evidence of that with respect to HIB 058, the Jenga game incident. Given the lack of any meaningful factual dispute as to HIB 058, we conclude that the

Commissioner's summary decision on this complaint was not arbitrary, capricious, or unreasonable.

We affirm as to HIB 058.

HIB 066

R.F. appeals the Commissioner's summary decision concluding that O.F. engaged in retaliation by filing an HIB complaint against B.K. and B.M. We conclude that the Commissioner committed error when it did so, essentially for the same reasons as discussed regarding HIB 012.

The parties present a genuine issue of material fact regarding why R.F. and O.F. filed HIB 058—whether it reported an actual dispute between O.F. and other students, or whether it was a false complaint as retaliation against B.K. and B.M. Resolution of this disputed ultimate issue is a necessary first step to determine whether there was retaliation under HIB 066. To do so, the finder of fact must first make credibility determinations. Conrad, 394 N.J. Super. at 13.

A thorough review of the record shows no factfinder or potential factfinder at any level, including: Butler, the superintendent, the Board, or the ALJ, made credibility determinations as to whether HIB 058's genesis was an actual dispute or a false complaint. This omission renders summary decision inappropriate. Singer, 379 N.J. Super. at 73. Consequently, we conclude that

31

the Commissioner's summary decision was arbitrary, capricious, and unreasonable.

We reverse and remand to the Commissioner for a hearing, as the parties presented a factual dispute regarding whether O.F.'s conduct was motivated by retaliation. Because we remand, again we do not reach R.F.'s delay claim.

Petitioner raised a claim applicable only to A-1774-24, that the Board erred by improperly delegating its HIB 058 and HIB 066 investigations to Butler. We reject this argument and comment briefly.

While petitioner objected via email to Butler's appointment by the Board, the record does not show that he raised this argument before the Commissioner. It follows that we review this claim for plain error.

Rule 2:6-2 restricts appellate review to questions or issues presented in the record at the trial level. See also J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021). While this court has the discretion to consider allegations of omissions or errors if it meets the plain error rule under Rule 2:10-2, this court often declines to do so when the opportunity to object was available below. "Plain error has intentionally been created as a high bar for parties to meet in order to encourage litigants to raise any objections to evidence at the trial level where the court can best 'forestall or correct a potential error,' in a timely

manner." State v. Santamaria, 236 N.J. 390, 409 (2019) (quoting State v. Bueso, 225 N.J. 193, 203 (2016)).

While attacking Butler's role, R.F. fails to challenge the adequacy of Butler's investigation and reports, or show how they prejudiced him. Indeed, R.F. cited, with approval, Butler's report in his submissions to the Commissioner. Ultimately, R.F. makes no showing that Butler's appointment or performance adversely impacted the outcome of this case.

Reversed and remanded as to A-0815-24. Affirmed in part and reversed in part and remanded as to A-1774-24. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division